## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| MAINE MEDICAL CENTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM A. BERRY & SON, INC., | ) |
| et al., | ) |
| | ) 2:16-cv-00052-JDL |
| Defendants, | ) |
| | ) |
| v. | ) |
| | ) |
| PHOENIX BAY STATE | ) |
| CONSTRUCTION, et al., | ) |
| | ) |
| Third-Party Defendants. | ) |

## ORDER ON DEFENDANTS' JOINT MOTION TO EXCLUDE
## SUPPLEMENTAL EXPERT DISCLOSURE

Plaintiff Maine Medical Center ("MMC") submitted a supplemental expert disclosure for Gus Doughty, one of its designated expert witnesses, on January 17, 2017. Defendants have moved to exclude the supplemental disclosure as untimely under Federal Rules of Civil Procedure 26(e)(2) and 37(c). ECF No. 130.

### I. BACKGROUND

This case arises out of alleged defects in the construction of Maine Medical Center's East Tower. MMC asserts that the Defendants, who were involved in the initial design and construction of the East Tower, are liable for the costs associated with fixing these defects. The parties have completed nearly all of the discovery, and

the Defendants and Third-Party Defendants have filed notice with the Court of their intent to seek summary judgment.

Gus Doughty has been designated as an expert by MMC to offer his opinion on the construction costs associated with the repairs to the East Tower. In accordance with the Court's scheduling order, MMC submitted its initial disclosures of its experts in June 2016. At that time, MMC was claiming approximately 5 million dollars in construction damages, and approximately 23 million dollars in lost revenue damages. The lost revenue damage figure was based on a plan to fix the defects in the East Tower by closing and renovating a few patient rooms at a time over the course of a 93-week construction schedule, so as to minimize impacts on patient care.

In November 2016, the MMC personnel involved with this litigation realized that MMC needed to amend its damages theory after they consulted with Heidi Morin, MMC's Patient Care Service Director for the East Tower. Morin vehemently objected to any construction plan that would involve the temporary closure of patient rooms. As a consequence of that meeting, MMC developed a new remediation plan that involves moving patient rooms to two new floors that MMC plans to add to the East Tower. The two new floors will be constructed as part of an ongoing expansion of the hospital unrelated to the construction that is the subject of this lawsuit. MMC asserts that none of its personnel involved with this litigation was aware of the unrelated plan to construct these two new floors at the time that MMC formulated its initial remediation plan, and maintains that the initial remediation plan was the best option available at the time.

The revised remediation plan calls for outfitting the two new floors to allow them to house patients from the East Tower during construction, to be followed by retrofitting those floors so that they will serve their original purpose once the remediation of the East Tower is completed. This proposed construction is forecast to cost approximately 16 million dollars, and the supplement to Doughty's expert disclosure describes those costs. MMC notified the Defendants in an email sent to them in the days following the November 2016 meeting that it anticipated changes to its damages claim, though it did not disclose the scope of those changes until it submitted its supplement to Doughty's expert disclosure on January 17, 2017.

## II. LEGAL ANALYSIS

Defendants argue that MMC's supplement to Doughty's expert testimony is not timely because it does not qualify as a supplement under Federal Rule of Civil Procedure 26(e), and should be excluded under Rule 37(c) as untimely and prejudicial. Plaintiff responds that the supplement qualifies as a timely supplement under Rule 26(e), or, in the alternative, that any lateness should be excused because the revision of its damages theory was substantially justified and any prejudice to the Defendants can easily be cured.

## A.    Federal Rule of Civil Procedure 26

Federal Rule of Civil Procedure 26 governs the conduct of discovery and the parties' duty to disclose information. Parties have a duty to supplement information given by expert witnesses in their reports and at their depositions, and any additions or changes must be disclosed at least 30 days prior to trial, unless the court orders

otherwise. Fed. R. Civ. P. 26(e)(2); Fed. R. Civ. P. 26(a)(3).[1] Plaintiff asserts that its submission qualifies as a supplement to Doughty's disclosure under Rule 26, and was therefore timely made.

Supplementation as contemplated by Rule 26 is a method of "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998). "[I]f a supplemental expert disclosure presents a new theory of the case, the district court has the discretion to exclude it and if it represents a refinement, the expert should be allowed to testify." *Maine Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 389 (D. Me. 2011).

The supplement offered by MMC in this case does not fit comfortably within the contours of Rule 26(e)(2). The new damages theory proposed by MMC is not properly characterized as a "refinement" of the original theory of damages presented in Doughty's initial disclosure. *See id.* It instead presents a new theory of damages. As such, it is not a refinement of Doughty's initial expert disclosure and was not timely under Rule 26. Accordingly, its admissibility is properly analyzed under Rule 37(c).

---

[1] Fed. R. Civ. P. 26(e)(2) states: "Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Rule 26(a)(3)(B) provides in relevant part: "Unless the court orders otherwise, these disclosures must be made at least 30 days before trial."

**B.     Federal Rule of Civil Procedure 37(c)**

Federal Rule of Civil Procedure 37(c) provides that if a disclosure is untimely

and is not substantially justified or harmless, the court may order that the party

offering the disclosure is not allowed to use the information on a motion, at a hearing,

or at trial.  Fed. R. Civ. P. 37(c)(1).[2]  The court also has the discretion to impose other

sanctions in addition to or in lieu of striking the disclosure, including payment of

expenses, informing the jury of the party's failure, or "other appropriate sanctions."

*Id.*; *see also Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 62 (1st Cir. 2011) (noting

that "preclusion is not a strictly mechanical exercise" and district courts have

discretion to impose lesser sanctions) (quotation omitted).  In determining whether

to impose sanctions and the severity of any sanctions to be imposed, courts consider

a number of factors, including:

> (1) the history of the litigation; (2) the sanctioned party's need for the
> precluded evidence; (3) the sanctioned party's justification (or lack of
> one) for its late disclosure; (4) the opponent-party's ability to overcome
> the late disclosure's adverse effects—e.g., the surprise and prejudice
> associated with the late disclosure; and (5) the late disclosure's impact
> on the district court's docket.

*Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009).  I turn to address

each factor.

---

[2] Fed. R. Civ. P. 37(c)(1) states: "Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
    (B) may inform the jury of the party's failure; and
    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."

### i. History of Litigation

Although the Defendants contend that this litigation "has not been without its warts and wrinkles," ECF No. 139 at 5, there is no evidence that MMC has repeatedly violated discovery deadlines or otherwise abused the discovery process. *Cf. Santiago-Díaz v. Laboratorio Clínico y De Referencia Del Este*, 456 F.3d 272, 277 (1st Cir. 2006) (imposing sanctions where party's "dereliction was both obvious and repeated"). The discovery deadlines in this case have been enlarged a number of times, at the joint request of the parties. MMC asserts that it has attempted to comply with all deadlines for expert disclosures, and that it notified the Defendants promptly regarding the changes to Doughty's damages calculations.

### ii. Need for Evidence

MMC's need for the proposed evidence is great. Given Morin's assessment, MMC's original remediation plan is no longer feasible. MMC's attorney confirmed at oral argument that MMC will no longer approve the original remediation plan. Preventing MMC from presenting evidence of the damages associated with its revised remediation plan would therefore force it to forego the largest part of its damages claim.

### iii. Justification

The justification offered by MMC for the delay in filing its supplemental disclosure is that the information needed to develop its new remediation plan was not available when the initial expert disclosures were due in June 2016. MMC maintains that its original plan was the best option available at the time, and learned that it

was no longer a viable option only after MMC announced that two new floors would be built on top of the existing East Tower. MMC did not, however, review its original remediation plan with clinical staff prior to submitting its initial expert disclosures. MMC pursued its original consequential damages claim through the majority of discovery, and only submitted the supplemental disclosure containing the new damages theory one week before the Defendants and Third-Party Defendants filed their notices of intent to file summary judgment. The record establishes that MMC would have recognized the problem with its original damages theory earlier than November 2016 if its personnel and expert witness had discussed the feasibility of the original damages theory with the clinical staff of the East Tower, including Morin, the Patient Care Service Director, before that time.

In September 2016, the Defendants deposed Lugene Inzana, the hospital's Chief Financial Officer, whom MMC had designated to testify regarding its original, lost-revenue damages claim. During the deposition, Inzana was asked if he had consulted with any clinical staff in the affected departments in the East Tower on the effect MMC's proposed remediation plan, with its planned closure of patient rooms, would have on the patient population. He confirmed that he had not yet met with the hospital's clinical staff regarding the plan, though he implied that such a meeting would be appropriate, and perhaps standard practice. *See* ECF No. 130-2 at 3 ("In a project like this, we would sit down with our clinical staff . . . and we would ascertain whether or not this particular activity could . . . impede care."). Also in September 2016, the Defendants deposed Dr. John Bancroft, MMC's Chief of Pediatrics, whom MMC had designated as a clinical expert to testify regarding the impact that the

original proposed remediation plan would have on the patient population. Dr. Bancroft acknowledged that he was not aware of any detailed discussions with the clinical staff regarding the impact of the proposed remediation plan, and that he had not been involved in the planning process. *See* ECF No. 130-4 at 2-3.

Following these depositions, in November, MMC reviewed the original remediation plan with Morin, the Patient Care Service Director in the East Tower. She was later deposed on January 25, 2017, and testified that when she was asked by MMC in November about the prospect of closing patient rooms to accommodate construction pursuant to the original, 93-week construction plan, she responded, "[t]hat is not something that we are going to be able to do at all." ECF No. 137-1 at 20, 65:4-5. She was "adamant" in rejecting the proposal "unconditionally." *Id.* at 20, 65:5-6; 29, 102:22-24. She testified that her unconditional rejection caused the Chief Financial Officer to turn white at the time. *Id.* at 20, 65:5-6. She further opined that closing patient rooms to perform repairs could have "catastrophic consequences." *Id.* at 27, 94:14-18. She also testified that she was the only person on the clinical side consulted, because she is "considered the expert in that area." *Id.* at 29, 103:13. It was after the conversation between Morin and Inzana, which took place in November 2016, that MMC developed its revised remediation plan, which incorporated the two new floors being constructed on top of the East Tower.

MMC asserted at oral argument that its initial disclosures and original remediation plan would not have been different even if it had consulted with Ms. Morin prior to June 2016; despite Morin's strong opposition, MMC maintains that the original plan was the only feasible option before its personnel learned of the plan to

build the two new floors on the East Tower. The revised remediation plan was developed only after MMC formally committed itself to the construction of two new floors, as the new floors provided an opportunity to better accommodate Morin's concerns. MMC therefore asserts that the late disclosure of its new remediation plan is justified because the unexpected availability of the two new floors constitutes a changed circumstance.

MMC has not, however, produced evidence that demonstrates that the information regarding the two new floors was unavailable before Morin was consulted in November 2016. The decision to formulate a new damages theory was prompted by her input. MMC offers no justification for why Morin was not consulted until long after the deadline for initial expert disclosures, and more than a month after the deposition of Dr. Bancroft, who was the expert that MMC itself had designated to offer a clinical perspective on the feasibility of the original remediation plan. Regardless of precisely when the information regarding the two new floors became available, MMC's failure to involve a key member of its clinical staff in the assessment of the feasibility of its original, 23-million-dollar remediation plan was a serious oversight.

### iv. Prejudice

The Defendants argue that they will suffer substantial prejudice if MMC is allowed to pursue a damages claim based on its new remediation plan. The parties have already completed the majority of the discovery in this case, and the Defendants have devoted substantial resources to assessing and preparing to challenge MMC's original damages claim. The Defendants advised the Court in their notices of intent

to file for summary judgment that they intended to challenge the evidence underlying MMC's consequential damages claim during the summary judgment process. *See, e.g.,* ECF No. 109. Accordingly, the discovery, investigation, and attorney time already devoted to challenging MMC's original damages claim will largely be wasted.

In addition, allowing MMC to pursue the new damages theory will necessitate extending discovery deadlines and postponing the summary judgment process. Defendants assert that they will need to engage in substantial new discovery to evaluate MMC's revised damages theory, which will include hiring multiple experts. ECF No. 139 at 7. MMC counters that the discovery undertaken thus far related to the consequential damages issue has not been extensive. MMC points out that Doughty, the expert whose testimony is at issue here, has not yet been deposed. Further, MMC argues that any prejudice can be cured by sanctions less drastic than exclusion of the proposed evidence.

### v. Impact on Court's Docket

The impact on the Court's docket is not substantial. The discovery deadlines in this case have already been extended multiple times, and the Court has not yet established a schedule for the summary judgment process.

### vi. Conclusion Regarding Sanctions

In light of the five *Esposito* factors, MMC's proposed supplement is neither substantially justified nor harmless. The lateness of the disclosure is due, in large measure, to MMC's unexplained failure to consult its clinical staff on the feasibility of its original damages theory. And the Defendants have incurred costs in preparing to counter MMC's now-defunct damages claim, and will likely incur significantly

more costs in defending against the revised damages claim. A sanction is appropriate in this case.

In crafting the appropriate sanction, I am mindful of the *Esposito* court's recognition that a more serious sanction requires a comparatively more robust justification. *See* 590 F.3d at 79. While excluding the proposed evidence here would not effectively amount to a dismissal, as did the sanction at issue in *Esposito*, it would prevent MMC from pursuing the largest portion of its damages claim. Furthermore, MMC's misfeasance, while meriting a sanction, does not involve bad faith or a willful disregard for the Court's scheduling orders. A sanction less drastic than exclusion is therefore appropriate. *Cf. id.* at 80 ("the punishment must approximately fit the crime").

As a sanction, MMC will be required to compensate the Defendants for the discovery costs, expert witness costs, and reasonable attorney's fees expended in preparing its defense against MMC's original damages theory. *Cf. Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. ---, --- (2017) (slip op. at 7) (sanctions should be limited to costs that would not have been incurred but for the misconduct). In addition, MMC will be restricted to using its current expert witness, Gus Doughty, to testify in support of its new damages theory based on the revised remediation plan.

## III. ADDITIONAL MATTERS

### A. Summary Judgment

In light of the above, additional discovery will be required on MMC's consequential damages claim. It is possible that this discovery may bring to light issues that will have a bearing on the remaining arguments to be addressed through

summary judgment. In addition, the interests of judicial economy are best served by postponing summary judgment and addressing all claims and arguments in a single summary judgment process. Further, the outstanding requests for summary judgment were premised on the parties' understanding that MMC would proceed with its original theory of consequential damages. Given these considerations, it is appropriate to postpone the summary judgment process until all discovery is complete.

**B.     Discovery Schedule**

As noted, allowing MMC to revise its consequential damages theory will necessitate the extension of discovery deadlines, and may require the parties to engage in substantial new discovery. Accordingly, this matter is referred to the Magistrate Judge for the establishment of a new schedule, as well as to determine the reasonable discovery costs, expert witness costs, and attorney's fees the Defendants should be awarded as part of the sanction authorized by this Order.

**IV.  CONCLUSION**

Based on the foregoing, Defendants' motion to exclude the supplemental report of Gus Doughty (ECF No. 130) is hereby **DENIED IN PART** to the extent that it seeks to exclude the supplemental report, and **GRANTED IN PART** to the extent that the Court has awarded sanctions. Plaintiff Maine Medical Center is hereby **ORDERED** to pay reasonable costs and expenses associated with Defendants' defense of the original consequential damages theory. Maine Medical Center is limited to the use of Gus Doughty as an expert witness in support of its revised consequential damages claim.

**SO ORDERED.**

**Dated this 20th day of April 2017**

                                        **/s/ JON D. LEVY**
                                        **U.S. DISTRICT JUDGE**